FILED
2025 Oct-17 AM 10:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **280-43, LLC; THOMPSON THRIFT DEVELOPMENT, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No: _____** |
| ) | |
| **SHELBY COUNTY, ALABAMA by and through the SHELBY COUNTY COMMISSION; SHELBY COUNTY COMMISSION; KEVIN MORRIS; TOMMY EDWARDS; JON PARKER; WARD WILLIAMS; ELWYN BEARDEN; JOSH SISK; LINDSEY ALLISON, RICK SHEPHERD; ROBBIE HAYES, each individually and in his or her official capacity; SHELBY COUNTY PLANNING COMMISSION; LANNETTE THOMAS; JAMES DAVIS; FLOYD COLLINS; SAMUETTA NESBITT; MICHAEL O'KELLEYKENNETH F. WILDER; BRETT WINFORD, each individually and in his or her official capacity; SHELBY COUNTY DEPARTMENT OF DEVELOPMENT SERVICES; CHRISTIE P. HESTER, individually and in her official capacity as the director of the Shelby County Department of Development Services,** ) | |
| ) | |
| **Defendants.** ) | |

---

## VERIFIED COMPLAINT

---

COME NOW plaintiffs and hereby allege as follows:

## PARTIES

1.    Plaintiff 280-43, LLC (the "**Owner**") is a limited liability company formed under the laws of the State of Alabama.

2.    The sole member of Owner is The Shirley Smith 2014 Irrevocable Trust.

3.    The sole trustee of The Shirley Smith 2014 Irrevocable Trust is Jeffrey L. Smith.

4.    Jeffrey L. Smith is a resident of the State of Alabama and a citizen of Alabama.

5.    Plaintiff Thompson Thrift Development, Inc. ("**Developer**") is a corporation formed under the laws of the State of Indiana with its principal place of business in Indiana.

6.    Defendant The Shelby County Commission (the "**Commission**") is a corporate body formed under the authority of the Alabama Legislature.

7.    The Commission may be served c/o Jon Parker, Chairman, at 200 West College Street, Room 123, Columbiana, Alabama 35051.

8.    Defendant Kevin Morris is a Shelby County Commissioner for District 1 and is named herein individually and in his official capacity.

9.      Defendant Tommy Edwards is a Shelby County Commissioner for District 2 and is named herein individually and in his official capacity.

10.     Defendant Jon Parker is a Shelby County Commissioner for District 3 and is named herein individually and in his official capacity.

11.     Defendant Ward Williams is a Shelby County Commissioner for District 4 and is named herein individually and in his official capacity.

12.     Defendant Elwyn Bearden is a Shelby County Commissioner for District 5 and is named herein individually and in his official capacity.

13.     Defendant Josh Sisk is a Shelby County Commissioner for District 6 and is named herein individually and in his official capacity.

14.     Defendant Lindsey Allison is a Shelby County Commissioner for District 7 and is named herein individually and in his official capacity.

15.     Defendant Rick Shepherd is a Shelby County Commissioner for District 8 and is named herein individually and in his official capacity.

16.     Defendant Robbie Hayes is a Shelby County Commissioner for District 9 and is named herein individually and in his official capacity.

17.     Upon information and belief, each of the members of the Commission may also be served at 200 West College Street, Room 123, Columbiana, Alabama 35051.

18.    Defendant the Shelby County Planning Commission (the "**Planning Commission**") is a corporate body formed under the authority of the Alabama Legislature.

19.    The Planning Commission may be served c/o Lannette Thomas, Chairman, at the Shelby County Services Building, 1123 County Services Drive, Pelham, Alabama 35124.

20.    Defendant Lannette Thomas is a member of the Shelby County Planning Commission and is named herein individually and in her official capacity.

21.    Defendant James Davis is a member of the Shelby County Planning Commission and is named herein individually and in his official capacity.

22.    Defendant Floyd Collins is a member of the Shelby County Planning Commission and is named herein individually and in his official capacity.

23.    Defendant Samuetta Nesbitt is a member of the Shelby County Planning Commission and is named herein individually and in her official capacity.

24.    Defendant Michael O'Kelley is a member of the Shelby County Planning Commission and is named herein individually and in his official capacity.

25.    Defendant Kenneth F. Wilder is a member of the Shelby County Planning Commission and is named herein individually and in his official capacity.

26.    Defendant Brett Winford is a member of the Shelby County Planning Commission and is named herein individually and in his official capacity.

4

27.    Upon information and belief, each of the individual members of the Planning Commission may also be served at the Shelby County Services Building, 1123 County Services Drive, Pelham, Alabama 35124.

28.    Defendant the Shelby County Department of Development Services (the "**Development Office**") is, upon information and belief, a department of the government of Shelby County, Alabama under the authority and direction of either the Commission or Planning Commission, or both.

29.    The Development Office is responsible for the due diligence and issuance of land disturbance and building permits within unincorporated Shelby County, as well as other regulation of development within unincorporated Shelby County.

30.    The Development Office may be served c/o Christie Hester, Director, at the Shelby County Services Building, 1123 County Services Drive, Pelham, Alabama 35124.

31.    Defendant Christie Hester is the director of the Development Office and is named here individually and in her official capacity.

32.    Upon information and belief, Ms. Hester may also be served at the Shelby County Services Building, 1123 County Services Drive, Pelham, Alabama 35124.

**JURISDICTION AND VENUE**

33.    Federal jurisdiction of this matter is proper pursuant to 28 U.S.C. § 1331.

34.    This Court may exercise jurisdiction pursuant to 28 U.S.C. § 1331 because of, among other potential reasons, the assertion of claims by Owner and Developer for violation of their rights under the United States Constitution and for a violation of Owner and Developer's rights pursuant to 42 U.S.C. § 1983 by the Commission and Planning Commission.

35.    The claims and issues arising in this matter relate to certain real property (defined below as the "Property") located in Shelby County, Alabama.

36.    This Court is the proper venue for the claims asserted herein because Shelby County, Alabama is within the Southern Division of the United States District Court for the Northern District of Alabama.

**FACTS**

37.    The Owner holds title to approximately 29 acres of real property located off Highway 280 and County Road 43, Parcel ID #09-8-28-0-001-006.000 (the "**Property**").

38.    The Property is in unincorporated Shelby County.

39.    The Property is currently unzoned and is not subject to the zoning authority of the Planning Commission.

40.    The Property is entirely within the "Chelsea South" zoning beat (the "**Beat**").

### *Shelby County's Zoning Authority*

41.    The authority for local zoning by counties or municipalities is derived solely and exclusively from the State of Alabama.

42.    In other words, absent delegation of authority from the Alabama Legislature, counties and municipalities lack the power to zone real property within their borders.

43.    There are no statutes of statewide application granting any county or county commission the right to zone real property within the county.

44.    The act originally creating the Planning Commission appears to have been Local Act No. 1965-816.

45.    The act creating the Planning Commission was amended multiple times over the years ultimately leading to the passage of Local Act No. 82-693 (the "**Act**").

46.    A true and correct copy of the Act, as currently amended, is attached hereto as *Exhibit A*.

47.    The Act, as amended, restated the act creating the Planning Commission.

48.    Section 1 of the Act creates (or restates the creation of) the Planning Commission.

49.     Since its passage, the Alabama Legislature amended or altered the Act multiple times but not in any way that appears to directly relate to or affect the issues included in this dispute.

50.     The Act expressly granted to the Planning Commission the right to establish zoning in Shelby County outside of any municipalities and create a master plan for such zoning but only in specific circumstances and after the happening of certain specific events.

51.     According to the Act:

The plan and zoning regulations should be made with the general purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the county, which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development, and should promote safety from fire, flood and other dangers, the healthful and convenient distribution of population, and the wise and efficient expenditure of public funds.

Act (Ex. A) at § 7.

52.     Section 8 of the Act provides for the "trigger" for the exercise of zoning authority by the Planning Commission which is a "petition" signed by "15 percent of the electors who reside within the beat and who own real estate located in the beat" followed by "the majority of the qualified electors of the beat voting in a special election have signified by their vote that they desire the authority of the

commission, its master plan, and the zoning regulations to apply to their beat." Act

(Ex. A) at § 8.

53.    Section 8 of the Act provides:

Except where jurisdiction has been obtained by the commission pursuant to Section 3, **the master plan and zoning regulations provided by the commission shall not be applicable in any beat of Shelby County until the majority of the qualified electors of the beat voting in a special election have signified by their vote that they desire the authority of the commission, its master plan, and the zoning regulations to apply to their beat.** The election must be held not less than 90 days or more than 120 days after a petition seeking the election is filed in the office of the judge of probate. **The petition shall be signed by at least 15 percent of the electors who reside within the beat and who own real estate located in the beat.** Notice of the election shall be given by three weeks' publication and posting notice in two public places within the beat. The cost of the election shall be paid from the general fund of Shelby County. The ballot shall be so worded as to give the voter the opportunity to vote either 'Yes' or 'No' as to whether the voter wishes the authority of the commission, its master plan, and the zoning regulations to apply to the beat. **Only those qualified electors residing outside of the municipal limits and in the unzoned portion of a beat shall be permitted to vote or sign a petition calling for the election in the beat concerned.** If a statement to this fact is not on the ballot and the petition, the ballot and petition are invalid. Boundaries of the established area approved for zoning by the qualified electors shall not be changed. Any property which is legally zoned as provided herein shall remain zoned and subject to the zoning authority of Shelby County and the Shelby County Planning Commission even if beat lines are changed to remove the property from the beat in which it was located at the time zoning became effective. Elections for the same beat shall not be held any more often than every 730 days. Notwithstanding the approval at any election of the extension of the authority of the commission and its zoning regulations to the beat, applications for preliminary subdivision plats which substantially comply with subdivision regulations and which were filed and pending prior to the certification by the probate judge of a petition for a zoning election as provided for herein shall vest in the applicant the right to

proceed with the application process before the commission, and upon approval of the preliminary plat, the right to develop and complete the subdivision according to the plat without application of the zoning regulations to the plat; and any successor in interest to the land made the subject of such plat shall have the right to use and develop such land in accordance with the plat and subdivision restrictions without the application of the zoning regulations to such land.

Act (Ex. A) at § 8 (emphasis added).

54.    Until the petition, certification of the petition, and affirmative vote in favor of zoning, the Planning Commission does not hold any authority to zone a particular beat.

55.    The Act does not expressly grant any right to either the Commission, Planning Commission, or Development Office to withhold issuance of development permits requested in compliance with existing laws/regulations.

56.    No other statewide act or local act applicable to Shelby County grants either the Commission, Planning Commission, or Development Office the right to withhold issuance of development permits requested in compliance with existing laws/regulations.

57.    The Act does not expressly grant any right to either the Commission or Planning Commission to impose a moratorium on development simply because zoning may be instituted subject to a vote from the applicable beat.

58.    The Act does not permit "retroactive zoning."

59.    The Act specifically provides that "[n]o zoning regulation adopted by the commission and county commission shall change any use to which land is being made at the time such zoning regulations become applicable in any beat." Act (Ex. A) at § 12.

60.    In 2001, the Legislature passed Act No. 2001-451 which was later approved by voters as Alabama constitutional amendment #707 ("**Am. #707**").

61.    Am. #707 granted certain "home rule" authority to the Commission, excluding the power to tax or raise revenue, including the right of the Commission to "adopt ordinances, resolutions, or regulations relating to its property, affairs, and county government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law enacted by the Alabama Legislature." Am. #707 at § 1(a).

62.    The Commission is granted the express authority to enact ordinances or resolutions relating to "[a]doption of codes, including building, housing, plumbing, and electrical codes for the protection of the public." Am. #707 at § 2(a)(12).

63.    Am. #707 restricts the authority of the Commission to take any action related to "any matters which the Legislature by general law has heretofore preempted by operation of law," Am. #707 at § 8, or any "[a]ction affecting the private or civil law governing private or civil relationships, except as is incident to the service of an independent governmental power." Am. #707 at § 8(10).

64.    Rights of property owners in their real property are protected by private or civil law which governs private or civil relationships.

### *Ongoing Development of the Property*

65.    On or about September 23, 2024, Owner contracted with Developer (the "**Agreement**") for the potential purchase of the Property by Developer for the intended purpose of developing a 300-unit luxury apartment complex (the "**Project**").

66.    The Agreement provides for a due diligence and permitting period in which the Owner and Developer agreed to work together to obtain the necessary due diligence and permitting to develop the Project.

67.    The Developer first spoke with the Development Office on September 9, 2024 regarding the property and the issues potentially involved in developing an "unzoned" site.

68.    The Developer was initially informed by the Development Office that obtaining "land disturbance permits" would "vest" the Project regardless of any later changes to make the Property zoned.

69.    Thereafter, the Developer met in-person with various relevant parties regarding the development, including the Development Office.

70.    On January 21, 2025, the Developer provided its first submittal to the Development Office for land disturbance permits.

71.     Developer thereafter received SP25-002 "Thompson Thrift Residential Site Work" submittal verification on January 24, 2025 and commentary on the submittal on February 14, 2025.

72.     On March 3, 2025, Developer obtained permit approval from the Alabama Department of Environmental Management ("**ADEM**").

73.     Developer made its second submittal to the Development Office for land disturbance permits on April 16, 2025 and received comments back from the Development Office on April 30, 2025.

74.     On April 27, 2025, the Development Office first informed the Developer that the issuance of a building permit, not land disturbance permits, was what created a "vested" right in the Project.

75.     On May 8, 2025, the Developer received permit approval from Shelby County water services.

76.     The Developer provided its third submittal to the Development Office for land disturbance permits on May 13, 2025 and received comments back from the Development Office on June 5, 2025.

77.     The fourth submittal for land disturbance permits was sent on June 11, 2025.

78.     The Development Office provided conditional approval for the requested land disturbance permits on July 3, 2025.

79.    On June 2, 2025, the Developer provided its first submittal to the Development Office requesting the issuance of building permits for the Project.

80.    Thereafter, the Development Office informed the Developer that the only remaining items needed to issue the building permits were (a) the sewer authorization letter and (b) the payment of the building permit fees.

81.    Based on that information, Developer made a formal request to the Development Office on July 25, 2025 to issue a letter of conditional approval for building permits contingent upon providing the sewer authorization letter and paying the building permit fees.

### *Recent Request for Zoning Vote*

82.    On or about July 29, 2025, a petition (the "**Petition**") was filed with the probate court of Shelby County pursuant to the Act which requested that the property within the Beat be zoned under the authority of the Planning Commission.

83.    The probate court did not provide notice to Owner and Developer of the filing of the Petition.

84.    The Development Office did not provide notice to Owner and Developer of the filing of the Petition.

85.    Pursuant to the Act, the probate court was obligated to "certify" the Petition was correctly filed and contained the necessary number of authorized voters, as set forth in the Act, to trigger the obligation of the probate court to set an election.

86.     On or about August 11, 2025, and prior to any certification of the Petition by the probate court, the Commission issued Resolution 2025-08-11-09 (the "**Resolution**").

87.     A true and accurate copy of the Resolution is attached hereto as ***Exhibit B***.

88.     The Resolution was purportedly issued in reliance on the authority of the Act.

89.     In its recitations in the Resolution, the Commission "finds that adopting a temporary suspension of development approvals upon development in the aforesaid beat will create a more stable environment during this period so that revisions to the Official Zoning Map, being a part of the Zoning Regulations of Shelby County can be formulated, considered, and adopted in an orderly and thorough manner." Resolution (Ex. B) at Recitals.

90.     Paragraph 1 of the Resolution provides for a purported "temporary suspension of development" (the "**Moratorium**") imposed upon any development in the Beat pending the October 28, 2025 vote as to the Petition.

91.     Paragraph 1 of the Resolution imposed the Moratorium "for the purpose of evaluating current land use within the aforesaid "Chelsea South" zoning beat." Resolution (Ex. B) at § 1.

92.     Specifically, Paragraph 1 of the Resolution provides, in part: "[t]hat a temporary suspension of development is hereby imposed effective on the petition received date for the Chelsea South Zoning Beat by the Probate Judge of Shelby County, Alabama, for the purpose of evaluating current land use within the aforesaid 'Chelsea South' zoning beat, conducting an appropriate land use survey and development of a proposed zoning map for said beat." Resolution (Ex. B) at ¶ 1.

93.     Paragraph 1 goes on to recite various tenets upon which the proposed new zoning created by the Planning Commission should be designed to meet (and assuming the Beat votes to accept zoning). Resolution (Ex. B) at ¶ 1.

94.     While Paragraph 1 of the Resolution recites language about certain concerns the Planning Commission must consider when creating a comprehensive (potential) zoning plan for the Beat, nowhere in the Resolution does the Commission cite any rationale why the Moratorium itself (and not zoning in general) is needed or required to "promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development," nor which "promote[s] safety from fire, flood and other dangers, the healthful and convenient distribution of population, and the wise and efficient expenditure of public funds." Act (Ex. A) at § 7.

95.     The Commission directed that the Planning Commission, and by implication the Development Office, "shall not accept, review, or continue to review

any application for development or planned residential, commercial, institutional, or industrial development within the said 'Chelsea South' zoning beat, and Shelby County shall not issue any building permits on or allow any construction or building projects within said beat during said period of temporary suspension of development unless specifically provided for or allowed herein." Resolution (Ex. B) at ¶ 2.A.

96.    Any action taken by the Commission seeking to restrict or alter property rights, and for which the authority to take such action is not expressly granted to the Commission, exceeds the Commission's authority under Am. #707.

97.    The Moratorium is not "incident to the service of an independent governmental power." Am. #707 at § 8(10).

98.    The probate court later certified the Petition on August 19, 2025 and filed the order at 1:38 p.m. central time certifying the Petition and setting the election.

99.    A true and correct copy of the order certifying the Petition and setting the election is attached hereto as ***Exhibit C***.

100.   The probate court order set the election for the Beat for October 28, 2025.

*Continued Efforts for Obtaining Permitting for the Project*

101.    On July 31, 2025, the Development Office rejected Owner and Developer's July 25, 2025 request for conditional approval of the Project and issuance of the required building permits.

102.    This rejection came after the Petition was filed on July 29, 2025 but before the issuance of the Resolution on August 11, 2025 and before the Petition was certified by the probate court on August 19, 2025.

103.    The Development Office again informed the Developer that the final piece of information required to obtain building permits was the sewer authorization form completed by the applicable sewer authority.

104.    The only other requirement for issuance of the building permits was payment of the appropriate fees for the permits.

105.    On July 31, 2025, the Developer received from the Development Office the final approval for the land disturbance permits for the Project.

106.    On August 18, 2025, the Developer received its sanitary sewer authorization letter from Alabama Water Utilities.

107.    On August 19, 2025 at 8:14 a.m. eastern time (7:14 a.m. central time), prior to the certification of the Petition by the probate court, the Developer submitted the sewer authorization form and a formal request for the fees due for issuance of the building permit.

108.   A true and accurate copy of the email chain between Developer and the Development office which includes Developer's August 19, 2025 submission of the sanitary sewer authorization letter and request for issuance of permits is attached hereto as ***Exhibit D***.

109.   The Development Office rejected the request to issue building permits and informed the Developer that "[t]he Probate Judge has entered an order for an election to be held on Tuesday, October 28, 2025. Until a decision has been made by the qualified electors in this beat, we do not have the authority to issue the building permits as requested." <u>August 19-20 Email Chain</u> (Ex. D).

### *Costs Incurred in Development*

110.   The Developer estimates its costs incurred in the Project to date to be approximately $400,000, including site investigation reports, civil engineering, architectural design, and permit fees.

111.   These expenses do not include the in-house time and effort on the Project by Developer's employees or principals.

112.   The Owner estimates its costs to date for the Project to be $370,000 with another $42,000 in outstanding costs and expenses yet to be paid.

113.   This includes expenses for architectural services, concept layout and grading, preliminary design, topographical survey, civil construction documents,

ADEM permitting, environmental inspections, lift station design, preliminary plat, emergency services, clearing of brush and trees, and other land preparation activities.

114.    The total cost expended to date by both the Developer and Owner is approximately $800,000+.

115.    There was no opposition from any governing authorities as to the Project – likely since the Property remains unzoned.

116.    The Owner and Developer provided nearly a million dollars in investment into the development the Property and Project, including environmental investigation and inspections, clearing of trees and brush, preparation for a new entryway in compliance with ALDOT standards, preparation of plans for the lift station required, and general site preparation needed for land disturbance upon receipt of the land disturbance permits.

### *Request for Exception or Exclusion from Moratorium*

117.    The Resolution contained a provision to seek an exception or exclusion from the operation of the Moratorium.

118.    The provision provides:

In the event any person, firm, or corporation shall be aggrieved by the imposition of this temporary suspension of development provided herein, they shall be allowed to appeal to the Planning Commission seeking a waiver of the limitation imposed by this temporary suspension of development for a particular building facility or project. In the event the Planning Commission deems said appeal worthy of merit and finds that a waiver should be issued, a request for such waiver approval shall be initiated by resolution of the Planning Commission

and submitted to the Shelby County Commission reciting the reasons therefore. If, upon consideration thereof, the Shelby County Commission shall determine that said waiver should be granted, an appropriate resolution to such effect shall be made and entered upon the records of the Shelby County Commission.

Resolution (Ex. B) at ¶ 3.

119.   On or about September 18, 2025, the Owner and Developer provided a formal written request for "a waiver of the limitation imposed by [the Moratorium] for a particular building facility or project," namely, the Project.

120.   A true and accurate copy of the September 18, 2025 letter to the Commission and Planning Commission is attached hereto as **_Exhibit E_**.

121.   Specifically, the Owner and Developer requested that

the Planning Commission or the [] Commission [] grant the Owner and Developer an exception or exclusion of the Property from the Moratorium and [] direct the applicable county employees to issue to the Owner and Developer their requested building permits for the proposed development of the Property (the "Project") as set forth in the materials provided by the Owner and Developer to the Shelby County Development Services Office (the "Development Office"). As described herein, the Owner and Developer request the exception or exclusion based upon (a) their vested right to the requested permits for the Project due to the expense and prior work performed on the Project; and (b) the lack of authority for the Commission or Planning Commission to impose the Moratorium before the Planning Commission is granted authority to regulate the zoning, use, or development of the Property within the Chelsea South zoning beat.

September 18 2025 Letter to Commission (Ex. E).

122.    The Owner and Developer requested relief from the Moratorium because Owner and Developer took sufficient action on this Project to be "vested" as to their submitted plans for development.

123.    Based on the actions taken by Owner and Developer toward the development of the Project, the Owner and Developer believe they met the requirements for a vested right to the issuance of the building permits. See Breland v. City of Fairhope, 337 So. 3d 741 (Ala. 2020); Grayson v. City of Birmingham, 173 So. 2d 67 (Ala. 1963); and Baker v. State Board of Health, 440 So. 2d 1098 (Ala. Civ. App. 1983).

124.    Because there is no zoning for this Property, there is no protection or promotion of "the health, safety, morals, and general welfare of the public" underlying the Moratorium.

125.    Until the election, there is no zoning in the Beat.

126.    There is no guarantee that the Beat voters will vote to approve zoning in the upcoming election.

127.    The Moratorium is not protecting any health, safety, morals, or general welfare because there may never be any zoning in the Beat to "protect."

128.    The Resolution did not include any reference to the health, safety, morals, and general welfare of the public underlying the need for the Moratorium.

*Monday, October 6, 2025 Meeting of the Planning Commission*

129.   Prior to various meetings with the public, the staff of the Planning Commission released a proposed zoning plan, including a map, for the Beat.

130.   A true and correct copy of the original proposed zoning plan map is attached hereto as **Exhibit F**.

131.   The zoning plan proposed to place the Property in a "holding zone."

132.   A "holding zone" is not specifically zoned for any use whatsoever.

133.   Accordingly, should the zoning be approved, Owner and Developer will be unable to proceed with the Project until the Planning Commission zones the Property.

134.   At the Planning Commission meeting, the Planning Commission staff opened with a presentation about the zoning efforts including a description of the purported purpose for the "holding zones."

135.   According to the Planning Commission staff, the "holding zones" were intended to address certain real property which may present difficulties for development, such as a location on a mountain ridge or in a low-lying area subject to potential flooding.

136.   The Property is not on a ridge nor in a low-lying area subject to flooding.

137.   In fact, the Owner and Developer already obtained approvals from ADEM and the federal government related to the development of the Project on the Property which indicated the Project, as developed, would not create a material flood risk.

138.   The Planning Commission met on October 6, 2025 to address the proposed zoning plan submitted by the Planning Commission's staff as well as the request for a waiver of the Moratorium by Owner and Developer.

139.   A true and accurate copy of the Planning Commission's agenda for the October 6, 2025 meeting is attached hereto as ***Exhibit G***.

140.   Although Owner and Developer sought a waiver or exception or exclusion from the Moratorium, which would have necessarily "vested" their use of the Property as intended in the Project, the Planning Commission chose to address the proposed zoning plan first and then hear the appeal for a waiver to the Moratorium.

141.   Owner and Developer were the only parties that formally requested a waiver of the Moratorium.

142.   To the extent any other property owner within the Beat requested such a waiver, Owner and Developer are not aware of the identity of such property owner.

143.   The Planning Commission agenda included approximately nineteen (19) formal requests for a change in the proposed zoning set forth by the zoning map.

144.   At the meeting, another four (4) to five (5) oral requests for rezoning of certain properties were presented and considered.

145.   Owner and Developer also appeared at the Planning Commission meeting, through counsel, to request a change in zoning to "R-5."

146.   A zoning of R-5 would allow for multifamily development matching the type and kind set forth for the Project.

147.   The Planning Commission approved every one of the requests for rezoning **EXCEPT** the request by Owner and Developer to rezone the Property from a "holding zone" to "R-5."

148.   A true and accurate copy of the post-meeting updated proposed zoning map, to reflect all changes approved by the Planning Commission, is attached hereto as **Exhibit H**.

149.   Instead, the Planning Commission rejected Owner and Developer's request and determined to leave the Property zoned as a "holding zone" if the Beat votes to accept zoning.

150.   The second agenda item at the Planning Commission meeting was the proposed waiver of application of the Moratorium to the Project.

151.   Counsel for Owner and Developer presented the proposal to the Planning Commission including all the same information presented in this complaint

regarding timing and effort put into the development of the Project and the costs incurred by Owner and Developer.

152.    Ultimately, by a vote of 3-2, the Planning Commission rejected the appeal which would have only given the Owner and Developer the right to present the same position to the Commission.

### Lack of Authority for the Moratorium

153.    The Commission lacks the authority to enter the Moratorium.

154.    Owner and Developer presented the lack of authority of the Commission to enter the Moratorium to the Planning Commission.

155.    However, the Planning Commission apparently rejected that conclusion.

156.    A county or municipality may not take any act outside those powers statutorily delegated to the county or municipality by the state.

157.    Statutes or ordinances which impose restrictions on the use of private property are strictly construed.

158.    The scope of statutes or ordinances which impose restrictions on the use of private property cannot be extended to include limitations on private property not therein included or prescribed.

159.    Owner and Developer are unaware of any statutes of statewide application granting a county or county commission the authority for either general

zoning or restriction of development of real property (including taking an action such as the Moratorium) outside of the zoning context.

160.    Two local acts may have application here. First, the Act, as amended, restated the creation and authority of the Planning Commission from Act No. 1965-816.

161.    The Act is the sole and exclusive statute or regulation granting the Planning Commission authority to establish zoning in Shelby County upon the happening of certain conditions.

162.    However, it is undisputed that those conditions which are prerequisites to the Planning Commission's zoning authority in the Beat have not yet been fully met, since the vote on the Petition is set for October 28, 2025.

163.    Accordingly, as of the current date and the date of the Resolution, neither the Commission nor the Planning Commission hold any authority to zone the Beat.

164.    Neither the Commission nor the Planning Commission currently hold any authority to arbitrarily place the Moratorium on development related to such potential future planning or zoning which may ultimately be rejected by the Beat's voters.

165.    The only other potential source of authority for the regulation of real property or development located is Am. #707.

166.   Am. #707 granted the Commission the authority to "adopt ordinances, resolutions, or regulations relating to its property, affairs, and county government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law enacted by the Alabama Legislature." Am. #707 at § 1(a).

167.   The Commission was granted the express authority to enact ordinances or resolutions relating to "[a]doption of codes, including building, housing, plumbing, and electrical codes for the protection of the public." Am. #707 at § 2(a)(12).

168.   The Moratorium does not relate to building codes or building safety, but to (potential future) zoning.

169.   Am. #707 restricts the authority of the Commission to take any "[a]ction affecting the private or civil law governing private or civil relationships, except as is incident to the service of an independent governmental power." Am. #707 at § 8(10).

170.   The relationship of a property owner to his or her property is one of the primary private or civil relationships which the law is designed to protect.

171.   A county or municipality's use of the police powers to enact zoning ordinances may not abridge or destroy Alabama's constitutional protections of private property contained in Art. I, §§ 13 and 35 of the Alabama Constitution.

172.   Neither the Act nor Am. #707 expressly grants the Commission or Planning Commission the authority to impose the Moratorium or any moratorium on development.

173.   Neither the Act nor Am. #707 grants the Commission or Planning Commission such authority, even impliedly, where the Planning Commission lacks any zoning authority.

174.   The authority for zoning laws is found within the bounds of the police power, asserted for the public welfare and zoning restrictions must bear some substantial relation to the public health, safety, morals, or general welfare, or as otherwise elsewhere expressed, the public convenience or the general prosperity.

175.   Put another way, any zoning activity must be within the bounds of the police power and must bear some substantial relation to the public health, safety, morals, or general welfare.

176.   If the zoning itself must fall within this police power, then the ancillary Moratorium must also fall under this authority.

177.   The Resolution contains no finding of fact, statement, or conclusion that the Moratorium bears any relationship to "the public health, safety, morals, or general welfare."

178.   While the Moratorium may eventually assist the Planning Commission and its staff when proposing a zoning plan (which may or may not ever be

implemented), there is no support in the Resolution that substantial development is likely to take place within the time between the certification of the Petition (August 19, 2025) and the vote on the zoning request (October 28, 2025).

179.   Absent such rationale and evidence to support the rationale, the Commission and Planning Commission, along with the Development Office, effectively denied the Owner and Developer the right to develop their (currently unzoned) Property without any material relationship to "the public health, safety, morals, or general welfare."

180.   The actions taken by the Commission, Planning Commission, and Development Office related to the Project and the Property are arbitrary and capricious.

181.   The denial of Owner and Developer's request for appropriate rezoning by the Planning Commission, while at the same time granting all other rezoning requests presented to the Planning Commission, is arbitrary and capricious.

182.   The Planning Commission's refusal to recommend to the Commission consideration of an exception or exclusion to the Moratorium based on the substantial development and pre-development work and cost expended by the Owner and Developer is arbitrary and capricious.

183.   The Development Office's refusal to issue the necessary building permits to the Owner and Developer upon receipt of all information required and prior to the certification of the Petition was arbitrary and capricious.

184.   As presented to the Planning Commission, if this situation is not one in which a waiver, exclusion, or exception to the Moratorium is warranted, then it is difficult to imagine or identify any situation in which a waiver, exclusion, or exception could apply.

185.   The failure of the Planning Commission to recommend to the Commission that the Commission consider a waiver, exclusion, or exception to the Moratorium is also arbitrary and capricious.

186.   The facts and issues here are analogous to other similar situations in which the Alabama Supreme Court determined the local government acted improperly in denying a landowner the use of the landowner's property sought by the landowner.

187.   A local governmental authority, such as a planning commission, cannot exercise its authority to regulate real property in a way that contravenes other laws.

188.   A local governmental authority may not institute a moratorium, lawful or otherwise, solely to disregard the local authority's obligation to evaluate an application for development permits that has no apparent flaws without a reasonable public welfare explanation.

189.   The Owner and Developer provided the Development Office with all the required materials to obtain the building permits for the Project at the Property.

190.   The only impediment to the issuance of those permits is the Moratorium.

191.   Yet, despite having met all obligations to entitle Owner and Developer to the issuance of the building permits, the Commission, Planning Commission, and Development Office refused to issue those building permits.

192.   A local governmental authority exceeds the scope of its expressly granted powers to regulate private property by unilaterally extending its ability to place restrictions on private property.

193.   If a local government chooses to regulate land, it must follow its own rules and regulations.

194.   If a local government chooses to regulate land before it has even established its own rules and regulations as to the regulation of such land, then the local government, in addition to other remedies, may be subject to tort liability.

195.   Here, the Commission imposed the Moratorium but lacks authority to regulate the very land subjected to the Moratorium.

196.   Here, the Owner/Developer provided the county with all necessary materials for issuance of the building permits which would "vest" with the Owner/Developer the right to develop the Project on the Property.

## CAUSES OF ACTION

### Count 1 – Declaratory Relief
### Lack of Authority for Moratorium

197.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

198.   Section 2201 of Title 28 of the United States Code provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C § 2201.

199.   This Court may also provide "[f]urther necessary or proper relief based on a declaratory judgment or decree [], after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

200.   The State of Alabama further provides for the right of a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Ala. Code* § 6-6-223.

201.   There is a real and existing dispute between the Owner/Developer and the Commission regarding the authority of the Commission to issue the Moratorium.

202.   The authority to control the use of real property within a county or municipality must be specifically granted to a county or municipality from the State of Alabama.

203.   Even regulation of real property for safety or other health concerns under the general police power is a delegated power to the county or municipality from the State of Alabama.

204.   The Act grants to the Planning Commission the right to zone certain real property in Shelby County, but only after an appropriate petition and approving vote within a beat.

205.   The Act does not grant the Commission or Planning Commission any right to restrict the use or development of real property within Shelby County unless and until the requirements of the Act are met.

206.   To date, there has been no vote approving any zoning of the real property within the Beat.

207.   Despite the lack of an approving vote for zoning and that the Property remains unzoned, the Commission exercised jurisdiction and authority over the Property to restrict its potential use.

208.   Based on the authority granted to the Commission by the Alabama Legislature, the Commission lacks the authority to regulate the development of unzoned property, excluding the authority generally granted under the Commission's police powers (such as code for construction, etc. for the health and safety of the public).

209.   Because the Commission lacks the authority to regulate the development of unzoned property prior to an affirmative vote of the Beat to be subject to the authority of the Planning Commission, the Commission does not hold any authority to regulate the use of real property in the Beat, including the Property.

210.   Because the Commission lacks the authority to regulate the use of real property in the Beat, the Moratorium restricting any development or usage of real property within the Beat exceeds the Commission's authority.

WHEREFORE, based on the foregoing, Owner and Developer request a declaratory judgment declaring the Commission lacks the authority to enter and enforce the Moratorium.

### Count 2 – Declaratory Relief
### Vested Rights to Development

211.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

212.   Section 2201 of Title 28 of the United States Code provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C § 2201.

213.   This Court may also provide "[f]urther necessary or proper relief based on a declaratory judgment or decree [], after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

214.   The State of Alabama further provides for the right of a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Ala. Code* § 6-6-22

215.   There is a real and existing dispute between the Owner/Developer and the Commission, Planning Commission, and Development Office regarding the vested nature of Owner and Developer for continued development of the Project.

216.   As specified above, Owner and Developer expended approximately $800,000 in the development of the Project over the course of more than one year.

217.   As part of the development process, Owner and Developer obtained all necessary permits for the development of the Project other than the final building permits.

218.   Among other approvals, Owner and Developer obtained ADEM approval, Shelby County water services approval, ALDOT approval for a new entry/exit to the Property, land disturbance permits, and sanitary sewer authorization.

219.   Owner and Developer provided to the Development Office all required materials for obtaining the building permits for the Project prior to the certification of the Petition and setting of the vote as to zoning in the Beat.

220.   According to the Development Office, upon submission of the sanitary sewer authorization, Owner and Developer met any existing requirements for issuance of the building permits other than payment for the permits (which the Development Office refused to provide based on the existence of the Moratorium).

221.   Based on the permitting, work performed, and expense incurred in development of the Project – all prior to the certification of the Petition and the entry of the Moratorium – Owner and Developer are entitled to issuance of the building permits and vested in their right to continue development of the Project on the Property.

222.   Further, Owner and Developer provided all required materials to the Development Office along with a request to issue the building permits in a timely manner and prior to the certification of the Petition which was required to set this matter for a vote.

WHEREFORE, based on the foregoing, Owner and Developer request a declaratory judgment declaring the Owner and Developer to be vested in their right to continue development of the Project on the Property and directing the Commission, Planning Commission, Development Office, and/or their staff to issue the requested building permits for the Project.

### Count 3 – Declaratory Relief
### Arbitrary and Capricious Rezoning

223.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

224.   Section 2201 of Title 28 of the United States Code provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C § 2201.

225.   This Court may also provide "[f]urther necessary or proper relief based on a declaratory judgment or decree [], after reasonable notice and hearing, against

any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

226.    The State of Alabama further provides for the right of a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Ala. Code* § 6-6-223.

227.    There is a real and existing dispute between the Owner/Developer and the Commission and Planning Commission regarding the refusal to rezone the Property in a manner sufficient to develop the Project.

228.    The zoning plan proposed by the Planning Commission staff placed the Property in a "holding zone."

229.    A "holding zone" is not specifically zoned for any use whatsoever.

230.    Accordingly, should the zoning be approved, Owner and Developer will be unable to proceed with the Project until the Planning Commission zones the Property.

231.    At the Planning Commission meeting, the Planning Commission staff opened with a presentation about the zoning efforts including a description of the purported purpose for the "holding zones."

232.   According to the Planning Commission staff, the "holding zones" were intended to address certain real property which may present difficulties for development, such as a location on a mountain ridge or in a low-lying area subject to potential flooding.

233.   The Property is not on a ridge nor in a low-lying area subject to flooding.

234.   In fact, the Owner and Developer already obtained approvals from ADEM and the applicable federal regulators (if any) related to the development of the Project on the Property which indicated the Project, as developed, would not create a material flood risk.

235.   The Planning Commission met on October 6, 2025 to address the proposed zoning plan submitted by the Planning Commission's staff as well as the request for a waiver of the Moratorium by Owner and Developer.

236.   Although Owner and Developer sought a waiver or exception or exclusion from the Moratorium, which would have necessarily "vested" their use of the Property as intended in the Project, the Planning Commission chose to address the proposed zoning plan first and then hear the appeal for a waiver to the Moratorium.

237.   The Planning Commission agenda included approximately nineteen (19) formal requests for a change in the proposed zoning set forth by the zoning map.

238.    At the meeting, another four (4) to five (5) oral requests for rezoning of certain properties were presented and considered.

239.    Owner and Developer also appeared at the Planning Commission meeting, through counsel, to request a change in zoning to "R-5."

240.    A zoning of "R-5" would allow for multifamily development matching the type and kind set forth for the Project.

241.    The Planning Commission approved every one of the requests for rezoning *EXCEPT* the request by Owner and Developer to rezone the Property from a "holding zone" to "R-5."

242.    Instead, the Planning Commission rejected Owner and Developer's request and determined to leave the Property zoned as a "holding zone" if the Beat votes to accept zoning.

243.    The only distinction between the Project and other rezoning requests is the nature of the Project (a multifamily development) and the fact that the Property is owned by a non-natural entity and a non-Shelby County resident.

244.    Based on the current usage and extensive development to date, combined with the full and complete request for issuance of the necessary building permits prior to certification of the Petition, Owner and Developer are entitled their current vested use of the Property to continue to develop the Project.

245.    The Commission and Planning Commission arbitrarily and capriciously denied the request from Owner and Developer to correctly zone the Property as "R-5" to meet the current and intended usage of the Property.

246.    Owner and Developer incurred damage due to this arbitrary and capricious action by the Commission and Planning Commission.

WHEREFORE, based on the foregoing, Owner and Developer request a declaratory judgment declaring the failure or refusal of the Planning Commission to rezone the Property in a manner to allow for the current and expected use of the Property, namely, the continued development of the Project, was arbitrary and capricious, and directing the Planning Commission to rezone the Property as "R-5."

## Count 4 – Declaratory Relief
### Arbitrary and Capricious Application of Resolution/Moratorium

247.    Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

248.    Section 2201 of Title 28 of the United States Code provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C § 2201.

249.   This Court may also provide "[f]urther necessary or proper relief based on a declaratory judgment or decree [], after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

250.   The State of Alabama further provides for the right of a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Ala. Code* § 6-6-223.

251.   There is a real and existing dispute between the Owner/Developer and the Commission, the Planning Commission, and the Development Office regarding the application of the Resolution and, specifically, the provision of the Resolution regarding any waiver, exclusion, or exception to the Moratorium.

252.   The zoning plan proposed by the Planning Commission staff places the Property in a "holding zone."

253.   A "holding zone" is not specifically zoned for any use whatsoever.

254.   Accordingly, should the zoning be approved, Owner and Developer will be unable to proceed with the Project until the Planning Commission zones the Property.

43

255.  At the Planning Commission meeting, the Planning Commission staff opened with a presentation about the zoning efforts including a description of the purported purpose for the "holding zones."

256.  According to the Planning Commission staff, the "holding zones" were intended to address certain real property which may present difficulties for development, such as a location on a mountain ridge or in a low-lying area subject to potential flooding.

257.  The Property is not on a ridge nor in a low-lying area subject to flooding.

258.  In fact, the Owner and Developer already obtained approvals from ADEM and the applicable federal regulators (if any) related to the development of the Project on the Property which indicated the Project, as developed, would not create a material flood risk.

259.  The Planning Commission met on October 6, 2025 to address the proposed zoning plan submitted by the Planning Commission's staff as well as the request for a waiver of the Moratorium by Owner and Developer.

260.  Although Owner and Developer sought a waiver or exception or exclusion from the Moratorium, which would have necessarily "vested" their use of the Property as intended in the Project, the Planning Commission chose to address

the proposed zoning plan first and then hear the appeal for a waiver to the Moratorium.

261.  Owner and Developer were the only parties that formally requested a waiver of the Moratorium.

262.  To the extent any other property owner within the Beat requested such a waiver, Owner and Developer are not aware of the identity of such property owner.

263.  Counsel for Owner and Developer presented the proposal to the Planning Commission including all the same information presented in this complaint regarding timing and effort put into the development of the Project and the costs incurred by Owner and Developer.

264.  Ultimately, by the vote of 3-2, the Planning Commission rejected the appeal which would have only given the Owner and Developer the right to present the same position to the Commission.

265.  The Planning Commission rejected the request for a waiver despite the substantial development efforts and costs to date and the request for issuance of the building permits prior to the certification of the Petition.

266.  As presented to the Planning Commission, the only reason to include a provision in the Resolution providing for a waiver or exception to the Moratorium is for situations identical to this situation in which the owner of a property within the Beat is currently using a property for potentially conflicting use to the proposed

zoning or is so substantially invested and vested in the existing development as to justify a waiver or exception.

267.   If the Project does not qualify for a waiver or exception to the Moratorium, then the provision of the Resolution providing for such waiver or exception is merely superfluous or illusory and will not have any application.

268.   The denial by the Planning Commission (and, by extension, the Commission) of the request for a waiver or exception to the Moratorium was not grounded in fact nor does the denial provide any benefit to the health or safety of the residents of Shelby County or to the property of those residents.

269.   The denial by the Planning Commission (and, by extension, the Commission) of the request for a waiver or exception to the Moratorium was arbitrary and capricious.

270.   Owner and Developer incurred damage due to this arbitrary and capricious action by the Commission and Planning Commission.

WHEREFORE, based on the foregoing, Owner and Developer request a declaratory judgment declaring the Planning Commission and the Commission's refusal to grant a waiver, exception, or exclusion to the Moratorium for the Project was arbitrary and capricious and granting the requested waiver, exception, or exclusion to the Moratorium.

*Count 5 – U.S. Constitutional Violation*

271.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

272.   The Commission took jurisdiction over the use and development of the Property.

273.   Specifically, the Commission issued the Moratorium forbidding development or issuance of building permits related to the Property and all real property located in the Beat.

274.   The Commission issued the Moratorium prior to any certification of the Petition seeking to call for a vote for potential zoning of the real property in the Beat.

275.   The vote as to zoning will not take place until October 28, 2025.

276.   Until the vote as to zoning is held, the Commission and the Planning Commission lack any authority to regulate the uses and development of unzoned property in the Beat, including the Property.

277.   Despite this lack of authority, the Development Office refused a reasonable, timely, and supported request from Developer for building permits for the Project on the Property.

278.   This request was made to the Development Office prior to the certification of the Petition.

279.   Developer and Owner raised these issues and concerns, along with other concerns, to the Commission and Planning Commission.

280.   Developer and Owner raised these issues and concerns to the Commission and Planning Commission in writing via correspondence.

281.   Developer and Owner raised these issues and concerns to the Planning Commission at the Planning Commission's public meeting.

282.   Despite knowledge of the lack of authority, development progress and expense, and the request for the final building permits prior to certification of the Petition, the Commission and Planning Commission refused to alter the proposed zoning for the Property.

283.   Despite knowledge of the lack of authority, development progress and expense, and the request for the final building permits prior to certification of the Petition, the Commission and Planning Commission refused to grant a waiver or exception/exclusion for the Project from the Moratorium.

284.   The refusal by County staff and the Development Office to issue the building permits to Owner and Developer was the direct result of the Moratorium.

285.   Despite granting all other requests for altered potential zoning, the Planning Commission refused to grant the Owner and Developer the requested zoning of "R-5" for the Property or even a special "R-5" zoning to allow for the Project.

286.    The Commission and Planning Commission refused to grant the requested zoning solely because the Property is owned by a non-natural entity and/or a non-Shelby County resident.

287.    The refusal to grant the zoning requested or provide a waiver to the Moratorium violated Owner's existing rights in the Property and Developer's potential rights in the Property.

288.    The Planning Commission granted all such requests from other property owners in the Beat.

289.    Based on the authority granted to the Commission by the Alabama Legislature, the Commission lacks the authority to regulate the development of unzoned property, excluding only the authority generally granted under the Commission's police powers (such as code for construction, etc. for the health and safety of the public).

290.    Because the Commission lacks the authority to regulate the development of unzoned property prior to an affirmative vote of the Beat to be subject to the authority of the Planning Commission, the Commission's creation of the Moratorium exceeds the Commission's authority.

291.    Because the only basis provided by the Commission, Planning Commission, Development Office, and County staff for the refusal to issue the building permits was the Moratorium, the Commission, Planning Commission, and

Development Office violated the property rights of Owner and Developer to develop the Project on the Property.

292.    The failure of the Commission, Planning Commission, and Development Office to properly follow the specific provisions of the Act deprived Owner and Developer of their due process Constitutional rights.

293.    The failure of the Commission, Planning Commission, and Development Office to treat Owner and Developer as any other property owner within the Beat deprived Owner and Developer of their equal protection Constitutional rights.

294.    Owner and Developer incurred damage due to the equal protection and procedural and/or substantive due process deprivation by the Commission, Planning Commission, and Development Office.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment in their favor and against the Commission, the Planning Commission, Development Office, and each of the members of the Commission and Planning Commission, and the Development Office directing the County to issue to Owner and Developer the required building permits and awarding damages to compensate Owner and Developer for their losses, including attorney fees and costs.

## *Count 6 – 42 U.S.C. § 1983*

295.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

296.   The Commission took jurisdiction over the use and development of the Property.

297.   Specifically, the Commission issued the Moratorium forbidding development or issuance of building permits related to the Property and all real property located in the Beat.

298.   The Commission issued the Moratorium prior to any certification of the Petition seeking to call for a vote for potential zoning of the real property in the Beat.

299.   The vote as to zoning will not take place until October 28, 2025.

300.   Until the vote as to zoning is held, the Commission and the Planning Commission lack any authority to regulate the uses and development of unzoned property in the Beat, including the Property.

301.   Despite this lack of authority, the Development Office refused a reasonable, timely, and supported request from Developer for building permits for the Project on the Property.

302.   This request was made to the Development Office prior to the certification of the Petition.

303.   Developer and Owner raised these issues and concerns, along with other concerns, to the Commission, Planning Commission, and Development Office.

304.   Developer and Owner raised these issues and concerns to the Commission, Planning Commission, and Development Office in writing via correspondence.

305.   Developer and Owner raised these issues and concerns to the Planning Commission at the Planning Commission's public meeting.

306.   Despite knowledge of the lack of authority, development progress and expense, and the request for the final building permits prior to certification of the Petition, the Commission, Planning Commission, and Development Office refused to alter the proposed zoning for the Property.

307.   Despite knowledge of the lack of authority, development progress and expense, and the request for the final building permits prior to certification of the Petition, the Commission, Planning Commission, and Development Office refused to grant a waiver or exception/exclusion for the Project from the Moratorium.

308.   The refusal by County staff and the Development Office to issue the building permits to Owner and Developer was the direct result of the Moratorium.

309.   Despite granting all other requests for altered potential zoning, the Planning Commission refused to grant the Owner and Developer the requested

zoning of "R-5" for the Property or even a special "R-5" zoning to allow for the Project.

310.   The Commission, Planning Commission, and Development Office refused to grant the requested zoning solely because the Property is owned by a non-natural entity and/or a non-Shelby County resident.

311.   The Commission, Planning Commission, and Development Office failed to strictly follow the procedures of the Act in carrying out the refusal to: grant the requested zoning; allow for a waiver, exception, or exclusion to the Moratorium; and issue the building permits as required under applicable law or regulation.

312.   The refusal to grant the zoning requested or provide a waiver to the Moratorium violated Owner's existing rights in the Property and Developer's potential rights in the Property.

313.   The Planning Commission granted all such requests from other property owners in the Beat.

314.   Based on the authority granted to the Commission by the Alabama Legislature, the Commission and Planning Commission lack the authority to regulate the development of unzoned property, excluding only the authority generally granted under the Commission's police powers (such as code for construction, etc. for the health and safety of the public).

315.    Because the Commission and Planning Commission lack the authority to regulate the development of unzoned property prior to an affirmative vote of the Beat to be subject to the authority of the Planning Commission, the Commission's creation of the Moratorium exceeds the Commission's authority.

316.    Because the only basis provided by the Commission, Planning Commission, and Development Office for the refusal to issue the building permits was the Moratorium, the Commission, Planning Commission, and Development Office violated the property rights of Owner and Developer to develop the Project on the Property.

317.    Owner and Developer incurred damage due to the equal protection and procedural and/or substantive due process deprivation by the Commission and Planning Commission.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment in their favor and against the Commission, the Planning Commission, the Development Office, and each of the members of the Commission and Planning Commission, directing the Development Office to issue to Owner and Developer the required building permits and awarding damages to compensate Owner and Developer for their losses, including attorney fees and costs.

## Count 7 – Negligence/Wantonness

318.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

319.   The Commission, the Planning Commission, the Development Office, and their individual members and agents owe all property owners in Shelby County a duty to reasonably and consistently apply any property laws or restrictions in Shelby County.

320.   The Commission, the Planning Commission, the Development Office, and their individual members and agents negligently and/or wantonly breached their obligation to all property owners, including Owner and Developer, by failing to reasonably and consistently apply the property laws or restrictions in Shelby County.

321.   The Commission, the Planning Commission, the Development Office, and their individual members or agents negligently and/or wantonly breached their duties to all property owners, including Owner and Developer, by arbitrarily and capriciously refusing to rezone the Property appropriately for the current use, namely the ongoing development of the Project.

322.   The Commission, the Planning Commission, the Development Office, and their individual members and agents negligently and/or wantonly breached their duties to all property owners, including Owner and Developer, by creating an unlawful Moratorium on development.

323. The Commission, the Planning Commission, the Development Office, and their individual members and agents negligently and/or wantonly breached their duties to all property owners, including Owner and Developer, by arbitrarily and capriciously failing or refusing to grant Owner and Developer an exclusion or exception to the Moratorium.

324. Owner and Developer will be, and have been, damaged by the Commission, the Planning Commission, the Development Office, and their individual members and agents' breach of their duty to Owner and Developer.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment against the Commission, the Planning Commission, the Development Office, and their individual members and agents, including compensatory and punitive damages, in an amount sufficient to compensate Owner and Developer for the negligence and/or wantonness of the Commission, the Planning Commission, the Development Office, and their individual members and agents and to sufficiently punish the Commission, the Planning Commission, the Development Office, and their individual members and agents for the improper conduct, including attorney fees.

### Count 8 – Writ of Mandamus or Certiorari

325. Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

326.   For the reasons set forth in Counts 1-7, the Commission, the Planning Commission, the Development Office, and their individual members and agents took official action on behalf of Shelby County and the Commission.

327.   The official action caused harm to Owner and Developer.

328.   For the reasons set forth in Counts 1-7, the Commission, the Planning Commission, the Development Office, and their individual members and agents refused to take official action on behalf of Shelby County and the Commission which the Commission, the Planning Commission, the Development Office, and their individual members and agents were obligated to take based on existing law and facts, including: refusing to rezone the Property; refusing to grant Owner and Developer a waiver, exception, or exclusion to the Moratorium; and refusing to issue to Owner and Developer the building permits upon Owner and Developer providing to the Development Office the required materials to obtain such permits.

329.   Based on existing law and facts, the Commission, the Planning Commission, the Development Office, and their individual members and agents are obligated to: rezone the Property; grant Owner and Developer a waiver, exception, or exclusion to the Moratorium; and/or issue to Owner and Developer the building permits following Owner and Developer providing to the Development Office the required materials to obtain such permits.

330.    The Commission, the Planning Commission, the Development Office, and their individual members and agents breached their official duties and obligations based on existing law and facts by refusing to: rezone the Property; grant Owner and Developer a waiver, exception, or exclusion to the Moratorium; and issue to Owner and Developer the building permits upon Owner and Developer providing to the Development Office the required materials to obtain such permits.

331.    Owner and Developer are entitled to a writ of mandamus or writ of certiorari directing the Commission, the Planning Commission, the Development Office, and their individual members and agents to: rezone the Property to "R-5;" grant Owner and Developer a waiver, exception, or exclusion to the Moratorium; and/or issue to Owner and Developer the building permits following Owner and Developer providing to the Development Office the required materials to obtain such permits.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment against the Commission, the Planning Commission, the Development Office, and their individual members and agents issuing to those parties a writ of mandamus or writ of certiorari directing those parties to: rezone the Property to "R-5;" grant Owner and Developer a waiver, exception, or exclusion to the Moratorium; and/or issue to Owner and Developer the building permits following Owner and

Developer providing to the Development Office the required materials to obtain such permits.

### Count 9 – Invalid Local Law

332.    Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

333.    As described herein, the Commission, the Planning Commission, the Development Office, and their individual members and agents took official action on behalf of Shelby County and the Commission to the detriment of Owner and Developer.

334.    These actions, and inactions, were based exclusively on the Act.

335.    The Act is a local act passed by the Alabama Legislature which is applicable only to Shelby County.

336.    Local laws, such as the Act, are improper pursuant to the terms of the Alabama constitution.

337.    Among other reasons, local laws, such as the Act, improperly delegate Legislative authority to local governments.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment declaring the Act to be improper pursuant to the provisions of the Alabama constitution.

### *Count 10 – Invalid Certification of Petition*

338.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

339.   Section 8 of the Act provides, in pertinent part:

> The petition shall be signed by at least 15 percent of the electors who reside within the beat and who own real estate located in the beat. … Only those qualified electors residing outside of the municipal limits and in the unzoned portion of a beat shall be permitted to vote or sign a petition calling for the election in the beat concerned.

<u>Act</u> (Ex. A) at § 8.

340.   Owner and Developer requested information from the Commission, Planning Commission, Development Office, the Shelby County probate court, and their agents and employees related to the certification of the Petition.

341.   The requests for further information were generally refused.

342.   Instead, the Owner and Developer were referred to the Alabama Secretary of State for information on the "qualified electors" in the Beat.

343.   However, the Secretary of State provided to the Owner and Developer conflicting information regarding the "qualified electors" in the Beat.

344.   Because of the refusal by Shelby County to provide the specific information regarding "qualified electors" in the Beat upon which the Shelby County probate court relied in certifying the Petition, Owner and Developer are unable to accurately recreate the facts surrounding the verification.

345.   Certain information provided by the Secretary of State appeared to demonstrate that the Petition should not have been certified (while other information pointed to the contrary conclusion).

346.   Because the Act must be strictly construed, the burden is upon the Commission, Planning Commission, Development Office, the Shelby County probate court, and their agents and employees to confirm the Act was followed and the Petition correctly certified.

WHEREFORE, based on the foregoing, Owner and Developer request a judgment declaring the Petition was improperly certified and was not in strict compliance with the Act and, accordingly, directing that the Petition be rejected or such other or different relief as may be appropriate.

### Count 11 – Emergency and Continuing Injunctive Relief

347.   Owner and Developer adopt and incorporate the previously alleged facts as if fully set forth herein.

348.   Owner is the owner of the Property.

349.   Developer contracted with Owner to purchase and potentially develop the Property via contract.

350.   Each of Owner and Developer holds property rights under Alabama law to the Property.

351.    Pursuant to Alabama law, real property (such as the Property) is unique and the Owner's ability to utilize that Property is unique to the subject property itself.

352.    The improper regulation of the Property, as detailed herein, will cause damage to the Owner and Developer which cannot be remedied by monetary relief.

353.    The inability of Owner and Developer to develop the Project on their unzoned Property will cause irreparable harm.

354.    The Petition was filed with the probate court of Shelby County on July 29, 2025.

355.    On August 11, 2025, prior to the certification of the Petition, the Commission issued the Resolution which included the Moratorium.

356.    The Commission lacked the authority to enter the Moratorium before the Petition was certified and a vote within the Beat was called.

357.    The Commission lacks authority to enter the Moratorium even after the certification of the Petition.

358.    On August 19, 2025 at 8:14 a.m. eastern time (7:14 a.m. central time), Developer provided to the Development Office the final piece of information (the sanitary sewer authorization letter) required for issuance of the building permits for the Project.

359.    The Petition was not certified and filed in the probate court until August 19, 2025 at 1:38 p.m. central time.

360.   Despite the lack of authority to enter the Moratorium (before or after the certification of the Petition), and an appeal to the Planning Commission and Commission for a waiver, exception, or exclusion to the Moratorium, the Commission, Planning Commission, their staff, and the Development Office refused to issue the required building permits.

361.   Other than the existence of the Moratorium, there was (and remains) no other reason for the refusal to issue the required building permits.

362.   Owner and Developer met all obligations entitling them to issuance of the building permits for the Project.

363.   If Owner and Developer are not awarded the building permits for the Project, as required pursuant to the laws, regulations, and rules governing such matters in Shelby County, Owner and Developer will be irreparably harmed if the vote for zoning in the Beat is successful.

364.   If the vote for zoning in the Beat is successful, Owner and Developer will be unable to use the Property for any purpose – at least until the Planning Commission zones the Property.

365.   The Planning Commission already rejected the request from Owner and Developer to rezone the Property as "R-5" to allow for the development of the Project.

366. Accordingly, any zoning determination by the Planning Commission is likely to deprive Owner and Developer of their current and existing right to develop the Project on the unzoned Property.

367. Absent injunctive relief from this Court directing the Commission, Planning Commission, the Development Office, and their staff to issue the building permits as required and as they are obligated, Owner and Developer will be irreparably harmed.

368. The refusal of the Commission, Planning Commission, the Development Office, and their staff to issue the building permits as required has caused, and will continue to cause, an immediate and irreparable harm to Owner and Developer in the form of the loss of use of the Property as intended and as currently being used and developed.

369. Any monetary damage to Owner and Developer arising from these actions by the Commission, Planning Commission, the Development Office, and their staff is difficult, if not impossible, to compute.

370. Accordingly, Owner and Developer seek to enforce the current and existing obligation of the Commission, Planning Commission, the Development Office, and their staff to issue the building permits for the Project as required and as they are obligated under existing law.

371.   Owner and Developer are likely to be successful on the merits of their claims against the Commission, Planning Commission, and Development Office based on the vested nature of the rights of Owner and Developer, the impropriety and lack of authority for the Moratorium upon which the Commission, Planning Commission, and Development Office rely to deny Owner and Developer the building permits, and the timing of the request for the issuance of the building permits and the later certification of the Petition.

372.   Because of the unique nature of the Property, Owner and Developer will suffer irreparable harm if the Commission, Planning Commission, Development Office, and their staff are not enjoined to issue the required building permits.

373.   Owner and Developer will not have an adequate legal remedy for the described actions by the Commission, Planning Commission, Development Office, and their staff.

374.   The refusal to issue the requested relief will cause substantial harm to Owner and Developer in the form of both monetary damage and non-monetary damage related to their inability to use the Property.

375.   If injunctive relief is granted, the Commission, Planning Commission, and Development Office would not be materially harmed.

376.   The requested relief would not harm, but would in fact benefit, the public interest by clarifying the authority (or lack thereof) of the Commission and

Planning Commission to regulate unzoned property in Shelby County prior to any affirmative vote to zone such property in any beat.

377.   The request for injunctive relief is styled as an emergency because, upon the occurrence of the vote of the Beat, regardless of the outcome, any claim asserted by Owner and Developer as to the Moratorium would be moot since the Moratorium (as it currently exists) would cease when the vote is completed.

378.   If the result of the vote is to zone the property within the Beat, Owner and Developer would lose any claim they may hold as to the impropriety of the Moratorium.

WHEREFORE, based on the foregoing, Owner and Developer request an emergency temporary restraining order, preliminary injunction, and/or permanent injunction directing the Commission and the Planning Commission and their individual members, their staff, the Development Office, any other Shelby County employees, the parties' officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the above-named entities or individuals to: (a) issue the building permits for the Project, either because the Commission lacks the authority to legislate the Moratorium or because Owner and Developer's usage of the Property for the Project is vested under Alabama law; (b) grant the Owner and Developer a waiver, exception, or exclusion to the Moratorium and issue the building permits for the Project, either because the

Commission lacks the authority to legislate the Moratorium or because Owner and Developer's usage of the Property for the Project is vested under Alabama law; and (c) appropriately rezone the Property as "R-5" to allow for the development of the Property in the event the Beat votes for application of the zoning authority of the Planning Commission to the property in the Beat.

Owner and Developer request such other or different relief as may be necessary or required.

## JURY DEMAND

Owner and Developer request a trial by jury on any claims so triable.

## **VERIFICATION**

I have read the above document and declare under penalty of perjury that the allegations set forth above are true and correct to the best of my knowledge. I understood that I provide those declarations under penalty of perjury as set forth in 28 U.S.C. § 1746.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 17, 2025.

JEFFREY L. SMITH,
as the manager of 280-43, LLC

DAN SINK,
as the authorized signatory for Thompson Thrift Development, Inc.

Respectfully submitted,

  */s/ John W. Clark IV*
JOHN W. CLARK IV (ASB-5187-O77C)
MOLLIE L. BRADFORD (ASB-1376-B98V)

BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
The SouthState Bank Building
600 Luckie Drive, Suite 415
Birmingham, Alabama 35223
Telephone:  205.879.1100
Facsimile:  205.879.4300
Email:      jclark@bainbridgemims.com
            mbradford@bainbridgemims.com


  */s/ Charles A.J. Beavers, Jr. (w/ permission)*
CHARLES A.J. BEAVERS, JR.

BEAVERS LAW, LLC
4301 Dolly Ridge Road
Birmingham, Alabama 35243
Telephone:  205.580.1125
Email:      cbeavers@beaverslawllc.com


  */s/ C. Randall Minor (w/ permission)*
C. RANDALL MINOR

MAYNARD NEXSEN
1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203
Telephone:  205.254.1000
Email:      rminor@maynardnexsen.com

**Attorneys for plaintiffs 280-43, LLC and Thompson Thrift Development, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on **October 17, 2025**, a copy of the above and foregoing document shall be served via private process server upon the following:

Shelby County Commission
c/o Jon Parker, Chairman
200 West College Street, Room 123
Columbiana, Alabama 35051

Shelby County Commissioners
(individually)
200 West College Street, Room 123
Columbiana, Alabama 35051

Shelby County Planning Commission
c/o Lanette Thomas, Chairman
Shelby County Services Building
1123 County Services Drive
Pelham, Alabama 35124

Shelby County Planning
Commissioners (individually)
Shelby County Services Building
1123 County Services Drive
Pelham, Alabama 35124

Shelby County Department of
Development Services
Shelby County Services Building
1123 County Services Drive
Pelham, Alabama 35124

Christie L. Hester, Director
Shelby County Services Building
1123 County Services Drive
Pelham, Alabama 35124

And via commercial carrier upon the following:

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, Alabama 36104

And a courtesy copy of the above and foregoing document shall be served via electronic mail upon the following:

Frank C. "Butch" Ellis, Jr.
WALLACE ELLIS
113 North Main Street
Columbiana, Alabama 35051
fellis@wefhlaw.com

/s/ John W. Clark IV
Of Counsel